335 So.2d 393 (1976)
Newton Ricky SMITH
v.
STATE.
6 Div. 947.
Court of Criminal Appeals of Alabama.
March 16, 1976.
Rehearing Denied June 1, 1976.
*394 Parker & Garrett, Birmingham, for appellant.
William J. Baxley, Atty. Gen., and Quentin Q. Brown, Jr., Asst. Atty. Gen., for the State.
CATES, Presiding Judge.
Selling marihuana: fine, $15,000; sentence, two years in the penitentiary, plus ten years for non payment of fine.

I
An undercover agent who positively identified Smith testified that on February 7, 1973, he bought "marijuana" from Smith for $160. A State toxicologist ran a Duquenois-Levine test on a part of the substance. The result was positive for the presence of marijuana. In the course of his testimony we find:
"Q Mr. Bailey, on the Duquenois-Levine test, if THC were present in the plant substance, would that still show up positive on the Duquenois-Levine test?
"A Yes, sir."
In Haynes v. State, 54 Ala.App. 714, 312 So.2d 406, the indictment used the word "marijuana". This term was used in the prodecessor statute, Code 1940, T. 22, § 256, as amended.
The 1971 Alabama Uniform Controlled Substances Act changed the definition. First, it used the spelling "marihuana". Whether this was intentional we do not know.
More importantly, the new law limited the term to cannabis sativa Linnaeus. There is respectable, though not unanimous, scientific authority to the effect that in addition to cannabis sativa Linnaeus there are at least two other varieties of cannabis sativa. See Stein, Laessing and Indriksons, An Evaluation of Drug Testing Procedures Used by Forensic Laboratories and Qualifications of Their Analysts, 1973 Wisconsin Law Review 727 at 767; United States v. Collier, (D.C., Super., March 19, 1974) 14 Cr.L. 2501.
Marihuana, or marijuana, in everyday speech is not a scientific name. However, when a statute defines a term with the limiting word "means", the courts must construe the expression narrowly. See Helvering v. Morgan's, Inc., 293 U.S. 121, 55 S.Ct. 60, 79 L.Ed. 232 and Sims v. Moore, 288 Ala. 630, 264 So.2d 484. The 1971 Act narrowed "marihuana" to cannabis sativa Linnaeus.
The 1971 Act also has expressly proscribed possession of a tetrahydrocannabinol (THC). The dictionary definition of marijuana is broad and embraces a plant substance containing THC. See Schedule I, § 204(d)(17) of the Act.
Here the indictment described the substance which Smith was accused of selling as "* * * marijuana, cannabis Americana or cannabis Indica, or a compound or mixture containing marijuana, cannabis Americana or cannabis Indica, * * *." This use of "marijuana" and not "marihuana" apprised the defendant that he was accused of selling a substance containing *395 THC. See Hill v. State, 56 Ala.App. 369, 321 So.2d 708.
We consider that the State made out a prima facie case.

II
The supervisors of the undercover purchaser had rigged him with a shortrange radio transmitter. Part of the direct examination of Sgt. Bibb elicited:
"A I had followed Officer Glover to this address in my car. He was in his car.
I followed him to the address, in order to cover
MR. PARKER: We object to his mental operation and move to exclude it.
THE COURT: Well, I am going to overrule the objection and let him testify.
MR. PARKER: We accept.
THE COURT: You can testify. Go ahead.
THE WITNESS: I followed Officer Glover, to cover a narcotic purchase.
MR. PARKER: That is what I am objecting to and move to exclude.
THE COURT: I will overrule the objection."
In brief appellant argues that this is a contemporaneous mental operation otherwise undisclosed. He further argues that it does not come under the principle of Starr v. Starr, 293 Ala. 204, 301 So.2d 78, because the purpose in Glover's mind was not "material" to the issue in the trial of the indictment. He would distinguish between relevant and material as the latter work is used in the Starr opinion.
We consider it would be an over refinement to exclude the operation of the Starr rule in this case. Certainly the State is entitled to corroborate its witnesses even though the proof is cumulative:
"As long as the plea of not guilty stood, the State had the right to prove its case up to the hilt and to choose its own way of doing so, subject only to the rules of evidence and the standards of fair play. Powell v. State, 40 Ala.App. 148, 109 So.2d 525, and cases there cited." Baldwin v. State, 282 Ala. 653, at p. 655, 213 So.2d 819, at p. 820.

III
With respect to the sentence of imprisonment for non payment of the fine, we consider that Code 1940, T. 15, § 341, applies only in cases of misdemeanor. This, because the obedience is in the county jail or where the county's hard labor agent lawfully directs.
Because of this, while the fine remains as a civil judgment, the penitentiary sentence must be set aside.
We have considered the whole record under Code 1940. T. 15, § 389. The judgment below is affirmed, but the cause is remanded for proper sentencing.

AFFIRMED; REMANDED FOR PROPER SENTENCE.
All the Judges concur.

ON REHEARING
CATES, Presiding Judge.
Neither the Attorney General nor the Appellant's lawyer thinks our original decision was right. They have different reasons.
The prosecution's position is that Part III of the opinion is wrong. The brief says in part:
"The State also feels strongly that the Circuit Courts of this jurisdiction should have the option of fining a convicted felon who is participating in an illegal occupation which may be extremely lucrative. The trial judges across the State frequently levy fines of this nature and many times do so in lieu of an increased sentence under the impression that the convicted felon can be penalized for this non-payment. The State can only submit that if this decision by the Honorable Court of Criminal Appeals is allowed to stand that a valuable deterrent in the fight against crime, and in particular, the *396 drug traffic will have been taken away from our system of justice."
Deterrents to drug traffic as well as other nefarious activities are the exclusive prerogative of the Legislature. The Courts cannot constitutionally however much tempted, emulate the Mikado's Lord High Executioner by making each punishment tailor-made to fit each peculiar crime.
Here Judge Gibson did not go outside his delegated duty in setting punishment. He did, however, extend § 341 (which commutes an unpaid fine into jail or hard labor time) to apply to a felony fine. This is incompatible with § 325 of T. 15 because here we would have a two year stretch in the penitentiary coupled with durance vile of ten years which, arguendo, if § 341 were to apply, could not be served in the penitentiary. All cases annotated under § 341, supra, according to a random sample are misdemeanors only. Tate v. Short, 401 U.S. 395, 91 S.Ct. 668, 28 L.Ed.2d 130, was not raised.[1]Williams v. Illinois, 399 U.S. 235, 90 S.Ct. 2018, 26 L.Ed.2d 586, is not applicable.
The Attorney General has simply argued without citing a single case. Nor has he come up with any attempt to make a logical demonstration or a syntactical parsing of the statute itself.
We remain persuaded that Part III of the opinion is right.
We consider that for the purposes of Rule 39, ARAP, we have heretofore in Parts I and II of our opinion given Appellant enough to get review by the Supreme Court of Alabama.
However, in fairness because of our fallibility through not being final, we go into another point raised by Appellant.

IV
After witness Bailey's testimony, the record shows:
"MR. PARKER: That's all I have, Your Honor.
THE COURT: All right. Do you all want to excuse him?
MR. HUFFSTUTLER: Yes, sir.
THE COURT: All right, you are excused.
MR. HUFFSTUTLER: Your Honor, I would like at this time, if possible, to let Mr. Bailey take that substance with him.
I have no intention to enter it into evidence. If it would be possible.
THE COURT: I don't know. If, at some later time, it becomes material, or if somebody wants it, we are going to have to sit and wait on him.
It would be highly unusual to do that.
MR. HUFFSTUTLER: All right.
THE COURT: I will say this to you:
I think I know what is bothering you, but I call myself as having taken care of the situation with Mr. Johnson, the man in charge of the toxicology office, here.
If we are left with something on our hands like this at the end of the trial, you don't need to have that worry about it getting into the wrong hands, or anything like that, because we are quite diligent about it.
MR. HUFFSTUTLER: I wasn't implying otherwise.
THE COURT: Yes, I know. I just wanted to explain to you. I wish it were possible to do like you say, then I wouldn't have to fool with this type of evidence later on.
However, I am afraid it wouldn't be practical.
*397 MR. PARKER: Judge, could I clarify for the record:
When you say `wrong hands,' you mean that the chain of evidence be kept so that the proper authorities have it, so that the jury will not misunderstand.
THE COURT: Well, what I meant was when the case is over with and is completely disposed of, no one need worry about me letting this stuff get out of here, or somebody carrying it out of the courtroom.
I am not talking about anybody connected with the trial. I am talking about it getting back into the trade or traffic, or anything like that.
I have a means of disposing of that sort of thing when it is no longer needed.
That is what I mean.
MR. PARKER: I didn't want the Court to say anything that it is prejudicial to my client.
I don't mean the Court is
THE COURT: Is it your contention that what I say is prejudicial, with that explanation, that this stuff, when the trial is over with, I am not going to give it to somebody, say, "Hey, Buddy," to somebody on the street, "Do you want this stuff?" that it won't be destroyed?
That is what I am talking about. Well, we will just do the rest of itif you want to go into it furtherin the absence of the jury.
I have not intended to prejudice this defendant. I don't know how in the world that what I said could prejudice.
All I said was that when this trial is over with that this stuff herethat I will dispose of it, that nobody need to worry about it.
MR. PARKER: Yes, sir. We except.
THE COURT: And I am not saying what it is. I am not saying it is marijuana. I don't know what it is, but, whatever it is, it will be disposed of in a manner wherein it will be a matter of record, and it won't be improperly done. That is what I am trying to say, whatever it be, whether it be Johnson grass, or anything else.

All right.
(WITNESS EXCUSED)
THE COURT: Anyway, from here on in, let's take up this sort of matter outside the presence of the jury.
Do you mind?
MR. HUFFSTUTLER: Yes, sir. I fully understand. I'm sorry, Your Honor.
State rests at this time, Judge.
THE COURT: All right."
Appellant argues that the foregoing colloquy injected prejudicial or vitiating influence into the minds of the jurors, citing Neal v. State, 36 Ala.App. 156, 54 So.2d 613.
Neal, supra, involved reprimands and sarcastic remarks by the trial judge addressed to defense counsel. Here Judge Gibson was courteous and made no prejudging of what the substance was. Moreover, the mere statement, "We except," was not a sufficient objection.
The application for rehearing is overruled.
OPINION EXTENDED; APPLICATION OVERRULED.

All the Judges concur.
NOTES
[1] Present Federal law dealing with the offender who does not pay a fine permits imprisonment until the fine is paid. 18 U.S.C., § 3565. An offender who has been imprisoned for 30 days solely because of the nonpayment of a fine can make application to the warden or to a U.S. Magistrate for a hearing on whether he should be released. He is then entitled to his release if it is found that he is unable to pay the fine and that he does not have any property exceeding $20 (excluding property that is exempted from being taken on execution for debt.) Finally, it is provided that the Attorney General may intervene if the offender has more property than $20, and may cause his release if such excess property is. found reasonably necessary for the support of his family. The Attorney General may also claim part of the excess property in partial satisfaction of the fine, and may similarly effect the prisoner's release. 18 U.S.C., § 3569.