342 So.2d 942 (1976)
William Leonard RADNEY
v.
STATE.
6 Div. 139.
Court of Criminal Appeals of Alabama.
December 7, 1976.
Rehearing Denied February 1, 1977.
*943 Parker & Garrett, Birmingham, for appellant.
*944 William J. Baxley, Atty. Gen. and Randolph P. Reaves, Asst. Atty. Gen., for the State, appellee.
DeCARLO, Judge.
The appellant was indicted on a charge of violating the Alabama Uniform Controlled Substances Act, and after a jury trial, he was found guilty and sentenced to three years in the penitentiary.
James Chambliss, a police officer with the City of Birmingham, was working as an undercover agent with the United Narcotic Detail Operation. He testified that on November 30, 1973, he went to the appellant's residence in Birmingham, Alabama. After being admitted by a female named Pat, he walked to the kitchen and told the appellant that he wanted to buy "a pound." Appellant told him to go back to the den. He went to the den and subsequently Pat handed him a brown paper bag containing a greenish brick-shaped object wrapped with pink plastic. Chambliss told her to call appellant because he only had one hundred and fifty-six dollars, and did not think that would be enough. When appellant complained about the amount, Chambliss reminded him that he had been shorted when he had bought "a pound" earlier. At that point the appellant told Chambliss to go on and give him "what he had." However, when he handed the money to the appellant, he refused and Chambliss handed the money to the female.
Chambliss left the appellant's residence and delivered the package to Sgt. James Earl Smith, the supervisor of the United Narcotics Detail Operation. Smith in turn carried the package containing the brickshaped object to the toxicologist's office on the following Monday, December 3, 1973.
In June of 1974, the appellant was indicted on a charge of selling marijuana and the trial was commenced on December 2, 1975.

I
During the trial, Charles Wesley Smith, a criminalist with the Alabama Department of Toxicology, testified that he had analyzed and examined the contents of the brown paper bag delivered to him by Sgt. Smith. Over defense counsel's objections, Charles Smith stated that it was his conclusion that the substance was marijuana.
Appellant now contends that the trial court abused its discretion in allowing Charles Smith to testify as to contents of the bag and argues that during the period that the analysis was made, Smith was a trainee. Counsel suggests that to allow this witness to testify as an expert concerning tests he had made during this period violates the due process requirement of the Fourteenth Amendment to the United States Constitution.
Counsel for appellant points out that the department of toxicology has established its own procedure requiring employees of limited experience to perform their duties under the supervision of another. He maintains that to allow a trainee to testify about the results of a test conducted without supervision is a violation of the Department of Toxicology's own procedure.
An individual may qualify as an expert witness by study, practice, experience or observation. The determination of whether he is sufficiently qualified to testify as an expert is a discretionary responsibility of the trial judge and his decision will only be disturbed upon a showing of abuse. White v. State, 294 Ala. 265, 314 So.2d 857; Thomas v. State, 249 Ala. 358, 31 So.2d 71.
The State's expert witness, Charles Wesley Smith, testified that for about a year preceding his graduation from Auburn University he worked part time for the Department of Toxicology in Auburn. In June of 1973, when he received his degree in chemistry, he came to work in Birmingham as a "Tech II." Smith explained that a "Tech II" was ". . . someone who still works under the direction of someone else but handles their own work." Following his graduation, he worked under the direction of the State Toxicologist, Dr. Rehling, then under the direction of Robert Johnson, the director of the Birmingham laboratory and afterwards, Dr. Richard *945 Roper, the director of the Montgomery laboratory. He stated that he tested evidence for marijuana on several hundred occasions.
Smith's expertise was a preliminary question for the trial judge and his determination that Smith was an expert was not an abuse of discretion. The witness disclosed special training and familiarity with the subject matter which sufficiently qualified him to speak as an expert.
The fact that Smith worked under the supervision of the laboratory director and was regarded as a "Tech II" at the time that he made the marijuana identification did not prejudice the rights of appellant. Smith's testimony as an expert was for the jury's evaluation.

II
The appellant claims that, in as much as the State indicted him for selling or giving away "marijuana," the State failed to prove the corpus delicti when it failed to establish the presence of the chemical substance tetrahydrocannabinol or THC.
This court recognized that in the 1971 statute two terms were used, "marihuana" and tetrahydrocannabinol and that tetrahydrocannabinol embraced chemically that which was covered by the dictionary word, "marijuana." Haynes v. State, 54 Ala.App. 714, 312 So.2d 406.
In Haynes, supra, the court stated that the use of the old or more general term "marijuana" in an indictment would apprise a defendant that ". . . he was accused of possessing a substance containing the incriminating ingredient of THCtetrahydrocannabinol."
The United States District Court for the western district of Wisconsin in December of 1974, declared "All species of genus Cannabis contain tetrahydrocannabinol, which is a psycho-active or intoxicating." U.S. v. Lewallen, 16 Crim.L. 2404. Additionally, we found these statements in Marihuana and Health, Second Annual Report to Congress from the Secretary of Health, Education and Welfare (DHEW Publication No. (HSM) 72-9113 Printed 1972):
"There seems to be general agreement that the material called marihuana in North America comes from a single species Cannabis sativa L. . . . Marihuana consists of a dried mixture of crushed leaves and flowering tops (with or without the inclusion of stems and seeds) of the Indian hemp plant.
"Contrary to previous beliefs, all the parts of the plant, including the leaves, contain psychoactive principles (cannabinoids). There is now convincing evidence that these cannabinoids are present in male as well as female plants (39, 15)." [Footnotes omitted and emphasis added].
See also: United States v. Walton, 168 U.S. App.D.C. 305, 514 F.2d 201 (1975).
In view of the foregoing, it is our judgment that once Smith, the toxicologist, employing his testing procedures, concluded that the questioned substance was marijuana, no proof of the tetrahydrocannabinol content was necessary. It was a question for the jury to weigh his testimony and find with him if they so desired.
Although it is contended that the microscopic and the Duquenois-Levine test were not sufficiently specific to identify marijuana, the fact remains that the testimony of the expert is subject to the jury's approval once he has been denominated as an expert by the trial judge.
Viewing the totality of the evidence, we find that the jury could well have found the appellant guilty as charged.
We also hold today that whether the illegal substance possessed is spelled "marihuana" or "marijuana," the offense is no less the same. Hill v. State, 56 Ala.App. 369, 321 So.2d 708.

III
It is insisted that the State failed to authenticate the enlarged photograph of a fingerprint allegedly belonging to the defendant. During the trial, fingerprints found on the cellophane around the marijuana were identified and authenticated by the State's expert witness, Betty Butler.
*946 She used the enlarged photograph in question in presenting her testimony concerning the process of comparing the appellant's known prints with those found on the cellophane wrapper. Mrs. Butler testified this was an enlargement of the fingerprints taken from an exhibit that she identified during the trial.
In our judgment, the photograph in question was not improperly admitted. The record clearly shows that it was an enlargement of a fingerprint already identified and authenticated by the witness.

IV
The appellant maintains that the trial court erred in failing to grant a new trial when it was shown that a prospective juror had remained silent during voir dire and his past association with the Jefferson County police went undisclosed.
Willie R. Glass stated during the motion for a new trial that the members of the venire were asked the question: "Have any of you been a police officer?" Glass admitted that he did not respond to this question. He explained that prior to the time of his service on the jury in question, he had been employed by the Jefferson County Highway Department, and on occasion, one of his duties was to guard prisoners. He said these were Jefferson County Jail prisoners who were part of work gangs from Camp Ketona in Jefferson County.
Glass stated that his verdict was not in "anywise" influenced by his experience as a convict guard and that his participation in the case as a juror was not biased for or against the defendant as a result of this service.
This court has said that the failure of a juror to make a proper response to a question regarding his qualifications to serve as a juror, regardless of the situation or circumstances, does not automatically entitle one to a new trial. The proper inquiry in such cases is whether the defendant's rights were prejudiced by such failure to respond properly. Sheperd v. State, 57 Ala.App. 35, 325 So.2d 551.
In the present case, Glass, during the hearing on the motion for a new trial, testified that his previous employment with the Jefferson County Highway Department as an occasional convict guard, did not prejudice his verdict in the trial of the appellant's case. Freeman v. Hall, 286 Ala. 161, 238 So.2d 330. From the facts recited during the hearing on the motion for a new trial, we believe that the remoteness of the employment and the ambiguity of the question asked, were factors contributing to the juror's non-disclosure. We therefore hold there was no abuse of discretion by the trial court in denying appellant's motion for a new trial on the basis of the failure to answer on the part of the juror. Smithson v. State, 50 Ala.App. 318, 278 So.2d 766.
We have read and examined this record and have not found any error.
AFFIRMED.
TYSON, P. J., and HARRIS and BOOKOUT, JJ., concur.
CATES, J., concurring specially.
CATES, Judge, concurring specially:
The Uniform Act uses the term "marihuana" saying it means "all parts of the plant Cannabis sativa L. * * * [except] the mature stalks, fiber * * *." § 258(25)(o), T. 22, Michie's Code.
But, the prosecutor rather than laying the offense in the terms of the Act, chose the following for the Grand Jury:
"The grand jury of said county charge that, before the finding of this indictment, WILLIAM LEONARD RADNEY, whose name is otherwise unknown to the Grand Jury, did on to-wit: November 30, 1973, while at or near 3532 66th Street North, Birmingham, Jefferson County, Alabama, unlawfully sell, furnish or give away 401.2 grams of marijuana, cannabis Americana or cannabis Indica, or a compound or mixture containing marijuana, cannabis Americana or cannabis Indica, to James Chambliss, contrary to and in violation of the provisions of Act No. 1407 of the 1971 Regular Session of the Alabama Legislature, otherwise known as *947 the Alabama Uniform Controlled Substances Act and that such sale, furnishing or giving away took place subsequent to September 15, 1971, against the peace and dignity of the State of Alabama."
In Haynes, 54 Ala.App. 714, 312 So.2d 406 and in McKenzie v. State, 57 Ala.App. 69, 326 So.2d 135, we said:
"The 1971 Act narrowed `marihuana' to cannabis sativa Linnaeus."McKenzie.
Now we are asked to say by way of at least cogent dictum:
"We also hold * * * whether the [substance] is spelled `marihuana' or `marijuana', the offense is no less the same." (Italics added).
To which I think must be added that under Haynes, supra, and McKenzie, supra, if [as we do not have here] the indictment charges possession or sale of marihuana, then the prosecutor must adduce proof of the presence of cannabis sativa Linnaeus or of THC.
Smith, the prosecution's expert chemist, testified among other things:
"I determined that it was cannabis sativa L. Cannabis Americana is a variety of cannabis sativa."
"* * * this is the generic name and classification for what is commonly known as marijuana.
"This is what the two tests, microscopic and Duquenois Levine, are specific for."
Again, the Legislature should be apprised of the semantic and legalistic morass, a veritable Serbonian Bog, which it has thrown in the path of the criminal justice system by its imprimatur on the Uniform Controlled Substance Actan excrescence of legislative draftsmanship devoid of elemental English.