A jury found defendant-appellant guilty under an indictment charging in pertinent part that he "did unlawfully sell, furnish or give away marijuana, a controlled substance contrary to the provisions of the Alabama Uniform Controlled Substances Act."
Appellant insists that his demurrer to the indictment on the ground of its failure "to allege the name of the vendee and therefore does not inform the Defendant of the charge against him which he must defend" was erroneously overruled. He expressly acknowledges that the Supreme Court of Alabama inAdkins v. State, 291 Ala. 695, 287 So.2d 451 (1973), rev'g51 Ala. App. 552, 287 So.2d 447, disposed of the identical insistence adversely to appellant. He cannot rightly expect this Court to rule otherwise.
Another insistence of appellant, that, as the substance alleged to have been *Page 634 
sold, furnished or given away was spelled "marijuana" in the indictment as distinguished from "marihuana" as it is found in the Alabama Uniform Controlled Substances Act (Code of Alabama 1975, § 20-2-23 (3)(j), the corpus delicti was not proved by evidence showing that "marijuana" had been sold without any evidence showing that it contained "tetrahydrocannabinol," there was a failure to establish the corpus delicti of a crime constituting the violation of the Alabama Uniform Controlled Substances Act, is not in accord with what has heretofore been authoritatively held. In Haynes v. State, 54 Ala. App. 714,312 So.2d 406, cert. denied, 294 Ala. 758, 312 So.2d 414 (1975), it was held that: "marijuana" contains "tetrahydrocannabinol (THC)." To the same effect are Hill v. State, 56 Ala. App. 369,321 So.2d 708, 712 (1975), cert. denied, 295 Ala. 405,321 So.2d 713; Smith v. State, Ala.Cr.App., 335 So.2d 393, 394-395, cert. denied, 335 So.2d 397 (1976). The precise question now considered has been twice decided against appellant. Radney v.State, Ala.Cr.App., 342 So.2d 942, 945, cert. denied,342 So.2d 947 (1977); Winnings v. State, Ala.Cr.App., 370 So.2d 323, 328, cert. denied, 370 So.2d 329 (1979).
We do not agree with appellant's contention that the chain of custody as to the marijuana was not established by the evidence, but there is no occasion for a full discussion as to the evidence as to the links of such chain, for the reason that, as stated in appellant's brief, the substance "was offered into evidence and admitted without objection." He further says in his objection that "Defendant would therefore gain nothing by objecting to the introduction of the substance in evidence at this [that] time." In other words, it appears that the particular insistence of appellant now considered is conditioned on a determination in his favor of his contention that the failure of the evidence to show by express testimony that the marijuana contained tetrahydrocannabinol constituted a failure to show a violation of the controlled substances law. As the condition has failed as noted above, nothing remains to support the conclusion urged by appellant.
The witness for the State who testified that he bought marijuana from the defendant was Guy Metcalf, Jr., an employee of the Alabama Bureau of Investigation, Department of Public Safety, Narcotics Division, who said that about 9:00 P.M. on May 28, 1978, he bought the substance from defendant, who was identified to him at that time merely by the name of "Slim." This occurred in a block house on Gate Street in Fairfax. While the witness was in the process of testifying on direct examination as to his said purchase of the marijuana, defendant indicated an objection to the witness' in-court identification of defendant and asked for a voir dire interrogation of the witness out of the presence of the jury, which was granted. During such hearing out of the presence of the jury, it was shown that on November 30, 1978, at a trailer or mobile home of Lamar Bagley a search warrant was in the process of being executed for search of the premises and that at such time Officer Metcalf had been requested by officers executing the warrant to appear at the trailer, which he did. There he saw the defendant, who he then learned was named Eddie Lamar Sharpe. Appellant made it known that he claimed that any in-court identification of the defendant by Officer Metcalf was tainted by an illegal search of the premises or an illegal arrest of defendant at the time. It is now contended by appellant that "Mr. Metcalf therefore had no authority to be where he was and was in the process of an illegal search and seizure when he identified the defendant and ascertained his name." He bases his contention on Code of Alabama 1975, §15-5-7, which provides:
 "A search warrant may be executed by any of the officers to whom it is directed, but by no other person except in aid of such officer at his request, he being present and acting in its execution."
Neither party offered the search warrant in evidence, and we do not have the benefit of a copy thereof. Assuming, however, that defendant's contention is correct that the warrant was not directed to Officer Metcalf, *Page 635 
but to another officer or officers, we are unable to agree with appellant's conclusion that there was a violation of the letter or spirit of § 15-5-7, Code of Alabama 1975. The pertinent part of the testimony of Officer Metcalf was as follows:
 "Q. And they didn't ask you to come over and participate in the search of Lamar Bagley's trailer, did they?
"A. Yes, sir.
"Q. And help them execute the warrant?
"A. Yes, sir.
"Q. Who asked you?
 "A. This was all a part of — I don't remember which one of the Sheriffs made it, I believe it was Mr. Walker.
"Q. Mr. Walker?
"A. Yes.
"Q. Asked you to come along?
"A. Yes, sir, it was one of the Sheriff's Deputies.
"Q. Johnny Walker?
"A. Yes.
 "MR. COOK: I would ask the Clerk to issue a subpoena for Johnny Walker in this case.
 "Q. Do you state that Johnny Walker asked you to come along?
 "A. Yes, either he or one of the other officers — one of the deputies.
 "Q. Did he ask you to come over there, or did he ask you to aid in the execution of the search warrant?
 "A. I don't recall. I don't recall that. I didn't make any notes.
"Q. All right. Did you go in and do any searching?
"A. No, sir, I did not."
Appellant further contends that the district attorney commented in the presence of the jury "concerning the Defendant's failure to testify," in violation of Code of Alabama 1975, § 12-21-220. The occurrence that gave rise to appellant's contention occurred before the trial commenced, before the jury was selected to try the case, and during the interrogation by the parties of the prospective jurors to aid them in the selection of the jury to try the case. After considerable interrogation of the jurors, defendant continued to question them as follows:
 "MR. COOK: What I am saying is that when the State is finished with its case and the State says that the State rests and they said to the defendant that they can put on their testimony and the defendant says, `Judge, we have no evidence we are going to present ___ would that influence your decision in any way?'
"PANEL MEMBER: No, sir.
"MR. COOK: O.K.
 "(Whereupon the jury panel member returned to his seat and Mr. Cook resumed voir dire questioning of the jury panel.)
 "MR. COOK: If in the trial of this case the State does not meet their burden of proof and chose not to put the defendant on the stand and testify and give the State a chance to examine him would any of you attach any significance to that if I make that decision would that influence your decision in any way if I make that decision.
 "MR. YOUNG: We object to that, to what his decision was.
"THE COURT: Overruled.
 "MR. YOUNG: How would the jury know if this was his decision or the defendant's decision?
"THE COURT: Overruled.
"MR. COOK: I want to make a motion now at the bench.
"THE COURT: Go ahead.
"(Following in front of bench)
 "MR. COOK: I want to make a motion on the record. Based on the District Attorney's comment I move, I move for a mistrial based on the District Attorney's comment, it will prejudice the jury in a way that is not to be overcome in relation that if the defendant did not take the stand how would the jury know if it would be your decision and not the defendant's decision not to testify? I say that this prejudices this defendant's right to a fair trial and I move for a mistrial. *Page 636 
 "THE COURT: The defendant's counsel opened up the question. The motion for a mistrial is denied. Go ahead. Tom, you be quiet.
 "(Whereupon Mr. Cook resumed voir dire examination of the jury panel.)
 "MR. COOK: I ask the question one more time. I say if at the end of the State's case, each of you understands that the State has a burden of proof of each element of the offense and the State has finished its case and rested and I make a decision that I don't want to place the defendant on the stand. I don't put any evidence on the stand and I choose to rest. I don't think the State has met the burden of proof, would this influence your decision in any way?
"Would you tend to attach any significance to it ___.
 "Now, you think about it and if it does let us know about it so the defendant can get a fair and impartial trial.
 "Is there anybody that feels that would affect them in the slightest degree?
 "Are any of you friends with, related to or do you know personally Guy Metcalf, Jr., Taylor Noggle, Robert Brock?"
The rest of the interrogation of the jurors by defendant's counsel continues for seven pages of the transcript, but none of it related to the question now under consideration.
We need not attempt to settle the issue between the parties on appeal as to whether defendant exceeded reasonable bounds in his intensive and extensive interrogation of the jurors that may have justified the quoted comment of State's counsel as a ground or part of his objection to the question defendant's counsel had just asked the jurors and not as a comment "concerning defendant's failure to testify." Neither the State nor the defendant made the course of the trial judge easy, but the denial of defendant's motion for a mistrial was not in error, in our opinion.
Appellant's final insistence is that a delay in arresting defendant from June 28, 1978, until November 30, 1978, entitled him to a sustention of defendant's oral motion to dismiss the indictment "due to unreasonable delay in the arrest of Defendant." Even if there were a legal basis for a complaint that an unreasonable delay in arresting defendant is a barrier to a trial for the alleged commission of a crime, we see nothing unreasonable about the delay in the instant case. To have justified an arrest of defendant, it could well be argued that the particular substance should be examined by an expert, which of itself required considerable time. Furthermore, although the witness who bought the marijuana could identify the defendant in person, he did not know his name until the date of his arrest. Neither the facts nor the law supports appellant's contention.
 "The police are not required to guess at their peril the precise moment at which they have probable cause to arrest a suspect, risking a violation of the Fourth Amendment if they act too soon, and a violation of the Sixth Amendment if they wait too long." Hoffa v. United States, 385 U.S. 293, 310, 87 S.Ct. 408, 417, 17 L.Ed.2d 374, 386.
There is no claim, and no basis for any claim, that any delay in the arrest of defendant was caused by action of the prosecution in order to make it more difficult for defendant to defend himself against the charge. In the absence of such a claim, or reasonable basis therefor, no constitutional questions are involved in pre-arrest delays. United States v.Marion, 404 U.S. 307, 92 S.Ct. 455, 30 L.Ed.2d 468 (1971).
We find no error in the record prejudicial to defendant. The judgment of the trial court should be affirmed.
The foregoing opinion was prepared by Retired Circuit Judge LEIGH M. CLARK, serving as a judge of this Court under the provisions of § 6.10 of the Judicial Article (Constitutional Amendment No. 328); his opinion is hereby adopted as that of the Court. The judgment of the trial court is hereby
AFFIRMED.
All the Judges concur. *Page 637