213 So.2d 819

**Miller BALDWIN**

**v.**

**STATE of Alabama.**

3 Div. 355.

Supreme Court of Alabama.

Aug. 29, 1968.

Edwin C. Page, Jr., Evergreen, for appellant.

MacDonald Gallion, Atty. Gen., and Lloyd G. Hart, Asst. Atty. Gen., for the State.

MERRILL, Justice.

Appellant was convicted of murder in -the first degree and was sentenced to life imprisonment. His motion for a new trial was overruled and he appealed.

Appellant contends that the court erred in ruling admissible in evidence two photographs of the deceased, Ruth Boykin. One was made in her house before her body was moved; the other was made in the funeral home by the toxicologist. The argument is that the two photographs were irrelevant, immaterial and gruesome.

Appellant argues that he did not deny' that the deceased was shot and killed, but since "his only defense was that he did not commit the crime, and offered evidence of an alibi," the photographs were not relevant or material. We cannot agree.

The burden was on the State to show that appellant killed Ruth Boykin by shooting her with a pistol. Both pictures showed the face of the deceased and showed the location of bullet wounds. The photographs met the test that they must have some tendency to prove or disprove some disputed or material issue, to illustrate or elucidate some other relevant fact or evidence, to corroborate or disprove some other evidence offered or to be offered. Nichols v. State, 267 Ala. 217, 100 So.2d 750; Knight v. State, 273 Ala. 480, 142 So.2d 899.

As long as the plea of not guilty stood, the State had the right to prove its case up to the hilt and to choose its own way of doing so, subject only to the rules of evidence and the standards of fair play. Powell v. State, 40 Ala.App. 148, 109 So.2d 525, and cases there cited.

The pictures depicted death but were not particularly offensive. The photograph of the whole body showed a few blood stains on decedent's left cheek or jaw, and the other was a photograph of her bust with a probe inserted in the path of the bullet along the side of her cheek and jaw, and a bullet hole in the side of her chest.

Courts and juries cannot be too squeamish about looking at unpleasant

things, objects or circumstances in proceedings to enforce the law and especially if truth is on trial. The mere fact that an item of evidence is gruesome or revolting, if it sheds light on, strengthens or gives character to other evidence sustaining the issues in the case, should not exclude it. Nichols v. State, 267 Ala. 217, 100 So.2d 750; Hines v. State, 260 Ala. 668, 72 So.2d 296. The court did not err in admitting the photographs into evidence. Mathis v. State, 280 Ala. 16, 189 So.2d 564; Boulden v. State, 278 Ala. 437, 179 So.2d 20.

■ Appellant argues that the trial court erred in its rulings on the following questions propounded by the special prosecutor to a witness who had testified to the good reputation of the defendant and that he had never heard anything against him:

"Q Did you ever hear anything about a case against him for VPL?

MR. PAGE: I object.

THE COURT: Overrule the objection.

MR. PAGE: We except.

"A No sir.

"Q Have you ever heard anything about a case against him for violating the prohibition law in 1944?

MR. PAGE: We object on the same grounds, Your Honor.

THE COURT: Overrule the objection.

MR. PAGE: That does not involve moral turpitude.

"A No.

"Q Have you ever heard anything about a case against him in 1944 for Sunday gambling?

"A No.

MR. PAGE: Now we object to that.

THE COURT: Overrule the objection.

MR. PAGE: We except.

"Q Have you ever heard anything about a case against him for illegal possession of whiskey in 1960?

MR. PAGE: We object on the same grounds.

THE COURT: Sustain it.

MR. NIX: That's all."

The answer to the first three questions was "No"; and the court sustained the objection to the fourth.

Appellant's argument is answered by the following from Helms v. State, 254 Ala. 14, 47 So.2d 276:

"When a witness testifies as to the general reputation or character of defendant, it is competent on cross-examination to test the witness' knowledge of this reputation or character of which he did testify by asking if he had not heard of specific acts of the defendant that tend to militate against his reputation or character. Barnett v. State, 165 Ala. 59, 51 So. 299; Bell v. State, 170 Ala. 16, 54 So. 116; Hill v. State, 194 Ala. 11, 69 So. 941, 2 A.L.R. 509; Hill v. State, 210 Ala. 221, 97 So. 639; Vinson v. State, 247 Ala. 22, 22 So. 2d 344; Wright v. State, 247 Ala. 180, 23 So.2d 519. In any event, the question was harmless in view of the negative answer. Hamlett v. State, 19 Ala.App. 218, 96 So. 371."

The last sentence quoted supra is also supported by Aaron v. State, 271 Ala. 70, 122 So.2d 360; Johnson v. State, 260 Ala. 276, 69 So.2d 854, and Stephens v. State, 250 Ala. 123, 33 So.2d 245.

A brief outline of some of the pertinent evidence shows that on Sunday night, April 16, 1967, John Stallworth, a neighbor of the deceased, had come to deceased's home to look at television. The son of deceased took the husband of deceased to work. Stallworth was looking at the program, "Sunday Night at the Movies," which began at 8:00 P.M., when appellant drove up in a Mercury automobile and knocked on the door. The deceased let him in, and after he spoke to Stallworth, appellant walked

into the kitchen where the deceased was. About a minute later, the deceased walked into the dining room and began dialing the telephone. Stallworth heard a shot and saw deceased fall on her back. He then saw appellant walk toward deceased and he fired again. He then shot at Stallworth twice without hitting him. Stallworth ran out of the house toward his home and he saw the Mercury being driven away. His wife called the sheriff's office. Another witness, Frances Millender, who lived about one-half mile from appellant's home, testified that about 8:30 or 9:00 P.M., appellant drove up to her house and asked for her husband. She told appellant her husband was asleep and he left. He was arrested at his house some two hours after the shooting was reported. Tuesday, her husband showed her a pistol in the fork of a double pine tree in their yard near the place where appellant had stopped his automobile on the previous Sunday night. The Millenders notified the sheriff and one of his deputies came for the pistol.

On Monday, deputy sheriff Brock got a search warrant and he and officer Kent went to appellant's home. He testified that he informed appellant's wife that he was looking for a pistol. They found a pistol box with a receipt or bill of sale from a Pensacola pawnshop to appellant for the purchase of a pistol in it. Both the receipt and the box contained the same serial number as that found on the pistol in the tree outside the Millender home.

A State Toxicologist, Guy Purnell, testified that, based upon ballistic tests he made, the bullet which killed decedent was fired from the pistol in evidence.

The defendant testified that he did not shoot decedent, that he was not there, but that he left home in his car about 8:00 P.M., went to Frances Millender's home, drank about three beers, returned home and went to bed, where he was when arrested. He testified that he had not owned a gun in twenty-seven years and the reason the receipt for the gun was in his name was that about a year before a Robert Johnson

gave him the money and told him to go to a pawnshop and buy the pistol. The defendant stated that he did this and turned the pistol over to Johnson and Johnson's son and that he has tried to locate the man and had been unsuccessful.

Appellant argues that the evidence relating to the receipt or bill of sale for the pistol was inadmissible because the search warrant was illegal.

On Monday morning, following the shooting and the arrest of appellant, and the securing of the statement of the eyewitness Stallworth, a search warrant was issued to aid in the search for the murder weapon. The charging part of the search warrant read:

"THE STATE OF ALABAMA
    CONECUH COUNTY

"To Any Lawful Officer of said County—

Greetings:

    "Before me, Tralice M. Shoemaker, Justice of Peace, in and for said County and State, personally appeared James M. Brock, and upon oath he states: That in his opinion and to the best of his information, there are (Pistol) on the premises of Miller Baldwin at Reynolds Avenue, Evergreen, Alabama, in Conecuh County, Alabama, because of the following facts: Looking for Pistol involved in a murder and evidence leading to the Murder of Ruth Boykin.

                "/S/ James M. Brock
                    JAMES M. BROCK

"Sworn to and subscribed before me, this the 17 day of April, 1967.

            "/S/ Tralice M. Shoemaker
                JUSTICE OF PEACE"

Deputy sheriff Brock and officer Kent took the search warrant and went to the home of appellant. Brock testified that he told appellant's wife that they were looking for a pistol in a murder case and she said "just come on in, look all you want to" and showed them her husband's room.

They did not find the pistol but did find the pistol box and the bill of sale, both of which contained the same serial number as the pistol in evidence.

Appellant contends that the search warrant was illegal under the authority of Aquilar v. State of Texas, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723, and Knox v. State, 42 Ala.App. 578, 172 So.2d 787, in which cases it was held that there was no showing of probable cause. We do not think this question requires decision.

The right to protection against an unlawful search is personal, and a defendant in a criminal case who denies any proprietary or possessory interest in seized property has no standing to object to the method of seizure. Guenther v. State, 282 Ala. 620, 213 So.2d 679; Aldridge v. State, 278 Ala. 470, 179 So.2d 51, and federal cases there cited. The defendant denied that the pistol was his, but said that he had purchased it for another.

The trial court admitted the bill of sale into evidence on two grounds; first, that probable cause had been shown, and second, that voluntary permission had been given for the search. We are not to be understood as disagreeing with the trial court, but merely that its ruling, if erroneous, was cured when the defendant denied any ownership of the pistol and any possession except as a purchasing agent.

Finally, appellant argues that the trial court erred in refusing to give the following charge:

"Gentlemen of the jury, I want to call your attention to one other thing, and that is that, under our system of laws, it takes twelve men to reach a verdict. If one man was firmly convinced beyond a reasonable doubt, after considering all the evidence, that the defendant is guilty as charged, although others were not convinced beyond a reasonable doubt, why you could not render a verdict at all, and there would be a mistrial. If on the other hand eleven of you believe beyond a reasonable doubt that the defendant is guilty as charged, and one man had a reasonable doubt of his guilt, arising from the evidence or from a lack of evidence, why then there would not be any verdict; you couldn't convict."

It is our opinion that reversible error is not made to appear in the trial court's refusal to give the requested written charge. It has been held that this charge is a correct statement of the law as part of the trial court's oral charge to the jury. McCullar v. State, 20 Ala.App. 585, 104 So. 436. But we are convinced that the same rule of law was substantially and fairly given to the jury in the court's general charge and the given written charges dealing with the presumption of innocence and reasonable doubt requested by appellant. Tit. 7, § 273, Code 1940; Gordon v. State, 268 Ala. 517, 110 So.2d 334.

We have found no reversible error in the record.

Affirmed.

LIVINGSTON, C. J., and LAWSON and HARWOOD, JJ., concur.