Manslaughter, first degree; sentence: five years imprisonment.
The appellant was indicted for first degree murder, the State alleging that he unlawfully with malice aforethought killed one Mary Lou Ritch, by shooting her with a gun or rifle. This was the second trial of this case. The jury in the first trial was not able to reach a verdict and a mistrial was declared. Appellant plead not guilty, asserting self-defense.
Prior to trial, the parties stipulated that the gun to be introduced in evidence was the gun of the appellant, and that the appellant *Page 1036 
fired the gun that killed Mary Lou Ritch. The parties further stipulated that James Roland Ritch, the son of deceased who was not present at the second trial, but who was in the automobile with his mother when she was killed, if present at the trial, would testify that he, his uncle, his mother, and either three or four young children had lived in the home of appellant for several months prior to the shooting. The stipulation was also that they lived in the home of the appellant with the knowledge of the Department of Pensions and Security, and that there was absolutely nothing romantic between appellant and his mother. The parties further stipulated that if James Ritch were present, he would testify that prior to the date of the shooting, there had never been any hard feelings or any harsh words between him and the appellant, or between his deceased mother and appellant.
Roy Thomas, State Investigator, testified as to his investigation of the homicide. He testified that he found three 30-30 fired rifle shells at the scene. A 30-30 Winchester Rifle along with the spent cartridges were introduced into evidence.
The appellant testified that he had recently had a stroke and an operation, was 61 years old and weighed 125 pounds. After working the regular shift at the cotton mill where he was employed, he returned to his home and found it ransacked and several items stolen. He stated that he had left James Roland Ritch at his home and that when he returned, James was gone. He stated that he went then to Winfield to Mr. Harris' store to buy some shells so he could go hunting. After leaving the store, he saw Mary Lou Ritch on her porch so he stopped and told her that her son had stolen some dynamite from him the night before and that he was going to have to turn him in, to which she asked him not to turn her son in, that if he did, it would ruin her.
The appellant said he then drove back to his home, got his gun and drove to Mack Crews' home to go hunting. He stated that when he parked in Crews' yard, an automobile drove up in which four men with long hair and Mary Lou Ritch were riding. He did not recognize any of the men, but he recognized the car and motioned for them to move on. When the automobile stopped, he told the men not to get out, that he did not want any trouble with them. He said that one of them started getting out the back door of the car, that at the time he had his gun down, thought it was pointing high, that he was looking at the man getting out of the back and meant to shoot over the top of the automobile to run them off. He stated that he did not know whether any of the men in the automobile knew that his house had been torn up the night before. After the shot was fired, the car drove off. He stated that at the time he shot, he did not know he had hit anybody. The stock of the gun was under his arm, and he thought he had shot above the car. He said he did not have any desire to shoot Mary Lou Ritch and that he would not hurt anybody unless he thought they were going to hurt him. When the appellant drove home, the sheriff was waiting for him and charged him with murder.
The only issue raised on appeal is that the trial court erred in allowing into evidence, over objection, "a gruesome picture [State's Exhibit 9] of the head of the deceased, enlarged and in color, taken in the hospital several hours after the death of the deceased, the picture showing clotted blood, brains, scissors, a support for the head and other inflamatory objects." Appellant submits that the photograph contained nothing which bore on any issue at the trial, the appellant having admitted previously that he had shot and killed the deceased.
Appellant states that he is fully aware that appellate courts of this state have been liberal in allowing the State to introduce gruesome photographs but that "these decisions were not intended to give the State blanket authority to use gruesome pictures for the single purpose of prejudicing a jury, whenever the picture bears on no issue in the case, and not taken at the scene of the event."
The Supreme Court of Alabama, with this Court following suit, has again and again held gruesome photographs, *Page 1037 
properly identified and authenticated, to be admissible if they: (1) tend to shed light on; (2) strengthen, or; (3) illustrate the truth of other testimony. They are likewise admissible if they have a reasonable tendency to prove or disprove some material fact or issue in the case. Photographs of dead bodies have been admitted in evidence in various cases for the purpose of illustrating the location, nature or extent of the wounds; identifying the deceased, or; to show the ocation or position of the body. 6 Ala. Digest, Criminal Law 438; 23 C.J.S. Criminal Law § 852 (1)c. More specifically see the rules set out in this regard in: Nichols v. State, 267 Ala. 217, 100 So.2d 750 (1958); McKee v. State, 253 Ala. 235,44 So.2d 781 (1950); Grissett v. State, 241 Ala. 343, 2 So.2d 399
(1941); Maness v. State, 57 Ala. App. 431, 329 So.2d 120 (1976);Hurst v. State, 54 Ala. App. 254, 307 So.2d 62, cert. denied293 Ala. 548, 307 So.2d 73 (1974); McHugh v. State, 53 Ala. App. 473, 301 So.2d 238 (1974).
In Baldwin v. State, 282 Ala. 653, 213 So.2d 819 (1968), Justice Merrill, after setting forth the above rules, held a photograph to be admissible which showed the face of the deceased victim showing the location of the wounds. However, he went on to say:
 "The pictures depicted death but were not particularly offensive. The photograph of the whole body showed a few blood stains on decedent's left cheek or jaw, and the other was a photograph of her bust with a probe inserted in the path of the bullet along the side of her cheek and jaw, and a bullet hole in the side of her chest."
Unlike the photograph in Baldwin, the one in the instant case is particularly offensive, ghastly and gruesome.
In Alabama, where the jury sets the punishment in homicide cases, we have been extremely liberal in allowing photographs portraying the mutilated bodies of victims. This for the purpose inter alia of shedding light upon the viciousness of the crime, the depravity of the killer, the ferocity of the attack, and like circumstances which the jury may take into consideration in fixing punishment. We have not allowed a depraved and vicious killer to mitigate his horrible or animalistic acts by merely stipulating that the victim is dead and the cause of death. Such reasoning does not always apply in every killing, however.
In the instant case, the facts indicate no ferocious and premeditated assault upon the victim, and there was a stipulation as to the cause of death. The jury found appellant guilty of manslaughter in the first degree. Had the objectionable photograph been excluded from evidence, it is possible that the verdict may have been a lesser degree or even an acquittal. In any event, the reasoning and theory which has resulted in such a liberal policy in this state in the admission of photographs does not seem to fully apply in the instant case. Yet, in applying the rules set forth by our Supreme Court, we must condone admission of the photograph if it meets any of the standards hereinabove enumerated.
The State contends the photograph was introduced in connection with the testimony of State Investigator Roy Thomas, and was illustrative of his testimony to show the nature and position of the wound inflicted and the relative position of the parties.
Alabama has not adopted the test for admissibility prevalent in California, i.e. whether the probative value of the photograph is outweighed by its probable prejudicial effect on the jury. 23 C.J.S. Criminal Law § 852 (1)c, footnote 82.65-82.70.
While we find very little probative value in the instant photograph, the purpose for its introduction meets the most bare minimum standards for admissibility pursuant to our Supreme Court cases. If ever the Court should decide to review the ultra liberal rule in this state on admission of gruesome photographs, this case would furnish it ample opportunity to do so.
AFFIRMED.
TYSON, HARRIS and DeCARLO, JJ., concur. *Page 1038