BOOKOUT, Judge.
Murder in the first degree; sentence: life imprisonment.
Frank Walton, the deceased, and appellant Braxton, long time acquaintances, were neighbors in adjoining duplex apartments in Birmingham, Alabama. Their relationship through the years was shown to have been rather stormy, with appellant having cut the deceased across the face in a dispute in 1967.
Testimony revealed that on January 8, 1977, the day of the murder, the deceased and appellant had become involved in a brief exchange of words at the apartment after an old car of appellant’s accidentally struck a truck which deceased had on loan from his employer. The two men separated, but later in the afternoon, as the deceased was sitting in a chair asleep on his side of the bannister-divided duplex front porch, appellant came out onto his side of the porch with a single shot sawed-off shotgun and shot Walton to death. Henry Lee Pratt, age 13, and his brother Charlie, age 11, who viewed the shooting testified in substance that Walton came out onto his porch, seated himself, and dozed off to sleep. Thereafter appellant came out, told Walton, who still appeared to be asleep, he did not “like them smart words,” and then shot Walton with a sawed-off shotgun. They stated appellant was in the process of reloading to shoot again when Bessie Mae Hubbard, the woman with whom appellant lived, came out and pulled appellant back into the apartment. Both children testified the deceased had no weapon. Henry Pratt also stated he saw appellant leave through the back door of his apartment immediately after the shooting. Jessie James Pratt, another brother, saw appellant leave from the back door carrying a shotgun under his coat.
Mrs. Louise Walton, wife of the deceased, testified she was in her kitchen on the afternoon of January 8, 1977, when she heard a gun shot. She went to the front porch where she found her husband, who had been shot, lying on the front porch. Mrs. Walton stated she too had heard the men exchange words over the small collision earlier in the afternoon. She also testified that her husband was unarmed.
Deputy Coroner Charles C. Robey examined the deceased and determined a shotgun wound on the right side of his lower chest was the cause of his death.
Officer Michael David Acton of the Birmingham Police Department, responding to a radio call, investigated the shooting at the Walton residence. He stated that when he arrived, the deceased was surrounded by medical personnel and was lying on the front porch. He saw no weapon of any kind around the deceased’s body.
The appellant took the stand in his own behalf. He testified the deceased had threatened to kill him on numerous occasions, including the day of the murder. He stated the deceased was armed with a pistol while seated on the porch and that he fired the shotgun when the deceased reached to pull the pistol from his pocket.
*1172 Annie Hubbard, mother of the woman with whom appellant lived, testified she heard the argument over the collision and heard the deceased threaten to kill appellant later on while he was on the porch. She further stated she saw a pistol in the deceased’s hand that afternoon when he came out onto the porch, but she did not tell appellant about it.
Bessie Mae Hubbard testified she had seen a bulge in the deceased’s pocket the afternoon of the murder which appeared to her to be a pistol. She also heard the deceased threaten appellant.
I
Appellant argues the trial court erred in allowing the prosecutor to elicit evidence from appellant that the deceased had once saved appellant’s life during a fire in appellant’s apartment. The record reflects the following exchange:
“Q Now, Eddie, you testified on direct examination about numerous threats that Frank Walton made against you between 1967 and the date that you shot him, is that correct?
“A Yes, sir.
“Q I’ll ask you if it’s not a fact that two years ago Frank Walton kicked the door down on a house that was burning up where you were asleep and pulled you out, saving your life?
“A He did.
“MR. MAYS: I’d like to go on record as objecting as to the relevancy.
“THE COURT: Overruled.”
Appellant’s counsel’s objection did not come until after the question was answered by the witness. “After a question is asked, and a responsive answer given, an objection comes too late, and the trial court will not be put in error absent a motion to exclude and an adverse ruling thereon.” Oatsvall v. State, 57 Ala.App. 240, 327 So.2d 735, cert. denied, 295 Ala. 414, 327 So.2d 240 (1976). There having been no motion to exclude, there is nothing before this court to review.
II
Appellant argues the admission of a color photograph, depicting the death wound, was erroneously admitted, highly prejudicial, and without probative value in light of his stipulation as to the truth and accuracy of the physical evidence depicted by the photograph. This contention is without merit.
Gruesome photographs, when properly identified and authenticated, have been repeatedly held admissible if they (1) tend to shed light on; (2) strengthen, or; (3) illustrate the truth of other testimony. Although not pleasant to view, this photograph is far from extreme in relation to gruesome photographs which the appellate courts of Alabama have approved in the past. Lewis v. State, Ala.Cr.App., 339 So.2d 1035, cert. denied Ala., 339 So.2d 1038 (1976). The purpose for the introduction of this photograph meets the standards adopted by Alabama appellate courts. There is no error.
The grounds relied upon by appellant for reversal have been considered in light of the record and briefs, and we find no prejudicial error which would mandate a retrial of the case.
AFFIRMED.
All the Judges concur.