Jimmy Ray Travis was indicted by the Mobile County grand jury for the first degree murder of Johnny Dean. Trial was had with the jury finding him guilty of first degree manslaughter. The jury set his sentences at ten years imprisonment. From that conviction he now appeals.
Mrs. Diane Condra testified that around 8:00 a.m. on June 18, 1979, she went to the victim's home to visit her aunt. She stated that she was in the kitchen with her aunt *Page 258 
and appellant's stepdaughter when the appellant arrived. He entered the kitchen and told his stepdaughter to get in his car which she refused to do. Mrs. Condra stated that the appellant grabbed his stepdaughter and led her to the car which she voluntarily entered. She testified that she tried to talk to the appellant who replied that she should keep her mouth shut and stay out of his family business. As the appellant was preparing to back down the victim's driveway. Mrs. Condra stated that her aunt called for the victim who had been in his garden working and was unaware of the incident at the house. She stated that she could not initially see the victim from where she was standing which was outside the house and near the back door. Mrs. Condra testified that the appellant, who was backing down the driveway at a high rate of speed, hit the victim, who was running toward the driveway, near the intersection of his driveway and the driveway of a small house owned by the victim which was located some distance in front of the victim's house and closer to the road. Mrs. Condra testified that the front end of the appellant's car turned to hit the victim with it carrying him to the road. Mrs. Condra looked to the garden where her child had been with the victim and after returning her attention to the victim, saw him in the road near his driveway entrance and a drainage ditch running parallel to the road waving his arms at the appellant, who, by this time, had backed into the road. She testified that the appellant's car swerved into the victim striking him a second time. Mrs. Condra left to call the police and upon returning saw the victim lying in the drainage ditch near his driveway entrance with the appellant and another man attempting to revive him. Mrs. Condra testified that she failed to tell the police about the first impact as she had her child on her mind and merely forgot. She stated that she did not know how far the appellant backed up the road and did not see the victim throw anything at the appellant or his car. Mrs. Condra testified that while she was viewing the body she asked the appellant "was it worth it" to which he told her to keep her mouth shut. Several photographs of the scene were identified by Mrs. Condra and properly admitted into evidence.
On cross-examination, Mrs. Condra testified that from where she was standing, she could see the driveway entrance, road, and the location of the victim relative to such. She stated that once the appellant's car backed into the road she lost sight of it until it returned to the area of the driveway entrance. Mrs. Condra testified that the victim, when hit the second time was standing somewhere between the middle of the road and the drainage ditch. Mrs. Condra first saw the victim as he ran from his garden to the driveway; a path which carried him in front of the small house. She stated that at or near the point that the driveway to the small house adjoined the driveway of the victim's residence, the appellant's car turned or swerved.
On redirect examination, Mrs. Condra pointed out that her vantage point was higher in elevation than the road and therefore could tell the position of someone standing in the road.
Mrs. Jeanette Lane testified that she is the stepdaughter of the appellant as well as the grandniece and niece of Mrs. Frances Dean and Mrs. Diane Condra, respectively. Mrs. Lane was not married at the time of the instant incident. She testified that around 7:30 a.m. on June 18, 1979, she had gone to her grandaunt's due to domestic problems at home. She stated that around 8:30 or 9:00 a.m. the appellant came to the victim's house to carry her home. Mrs. Lane testified that the appellant was "mad", "angry", and "upset", and when leaving the victim's house backed down the driveway at a high rate of speed. Mrs. Lane first saw the victim walking across the driveway running toward the road with something resembling a rock in his hand. Mrs. Lane testified that the appellant did not hit the victim in the driveway as testified to by Mrs. Condra but rather proceeded out to the road. She stated the appellant's car momentarily stopped then sped forward in the direction of the victim. She stated that the car was in the middle of the road. *Page 259 
Mrs. Lane testified that the car was swerving and the tires were spinning as it moved forward. She stated the victim had his arm cocked as if to throw something and, apparently, in response to such, the appellant covered his face with his arm. Mrs. Lane did not see the impact as she had closed her eyes and turned her head although she heard a "little bump." She stated that she told the appellant he had hit the victim and he immediately stopped the car. Both of them got out of the car and went to help the victim. Mrs. Lane testified that the appellant did not swerve or turn the car toward the victim although in her statement taken at the scene shortly after the incident she made statements to the contrary but explained that at that time she was mad and upset at the appellant. She testified that she could clearly see the victim once the car was in the road.
On cross-examination, Mrs. Lane stated that she turned her head or closed her eyes prior to the impact because she knew something was going to happen.
Mr. Thomas Long testified that on June 18, 1979, he was a neighbor of the victim's. On that day, he was in his yard and saw the appellant's car back down the road, heard it shift gears, and saw it proceed forward at a high rate of speed. Mr. Long stated that he heard a loud impact and afterwards got into his car and drove to the scene of the incident wherein he found the victim lying near a drainage ditch with the appellant beside him. He stated that the appellant's car had stopped in the middle of the road. Mr. Long attempted to aid the victim. He stated that the appellant asked several times for help and stated many times that the victim would be all right.
Mrs. Ethel Davis testified that on June 18, 1979, she was the victim's next door neighbor and was in her yard when she saw the appellant's car back rapidly down the road, shift gears, and rapidly proceed forward. She stated that she heard a loud collision and walked to the road wherein she saw Mrs. Dean and Condra and the appellant. She did not see the victim or go to the scene of the incident. She testified that the incident occurred in Mobile County.
Mrs. Frances Dean testified to the June 18, 1979, family incident between her grandniece and the appellant. She stated that the appellant told his stepdaughter that he would "beat the hell out of her" if she did not go with him. Mrs. Dean stated that she called for her husband out of fear of what might happen to her grandniece. Mrs. Dean testified to the two impacts suffered by her husband as previously testified to by Mrs. Condra.
On cross-examination, Mrs. Dean testified that her husband had no idea of what had occurred at their home prior to her calling him. She stated that from her position outside the house she could see her husband in the garden. She stated that he did not run but walked fast toward the driveway. She stated that when her husband was initially hit, the appellant's car's front end turned toward him. Mrs. Dean testified that after the initial impact she moved closer to the road and at the time of the second impact was near the point of initial impact. She stated that she could see the appellant's car during the entire incident although a cluster of trees and underbrush were near the side of the road wherein the appellant had backed his car. She testified that the trees were not so dense that she could not see through them. Mrs. Dean testified that her husband did not throw anything at the appellant's car and, when he was hit the second time, had his hands raised attempting to stop the appellant.
Mobile Sheriff's Department Detective Willie Estes testified that around 10:30 a.m. on June 18, 1979, he arrived on the scene of the instant incident to conduct the investigation. He stated that when he arrived both the victim and the appellants' car had been moved. He identified several photographs of the appellants' car which were properly admitted into evidence.
Detective Estes testified that after giving the appellant hisMiranda rights he took a statement from him which was tape recorded. He produced a transcript of the statement and, using such to refresh his recollection, testified to the contents of the appellant's *Page 260 
statement. Detective Estes stated that the appellant was not threatened or coerced into making a statement and no promise was made in exchange for such. He stated that the appellant was not drunk and understood his questions.
Detective Estes testified that the appellant told him about the events concerning his stepdaughter and himself at the victim's house. The appellant stated that he saw the victim in the road before he hit him and swerved in an attempt to miss him, but did not know that he had struck him. He stated that the victim was attempting to throw something at his car and when his stepdaughter told him that he had struck the victim, he stopped his car, got out, and went to him.
Detective Estes testified that dents on the right front portion of the appellant's car in the area of the right headlight were made by its impact with the victim. He stated that there was no damage to the left side of the car and no evidence that the victim had been thrown upon the hood of the car. He opined that the first collision between the victim and the appellant's car as testified to by Mrs. Condra and Dean did not occur. He stated that they did not tell him of such when he took their statements and first heard of such at the appellant's preliminary hearing.
Mobile Sheriff's Department Deputy William Wade testified that he assisted in the investigation of the instant incident stating that he took several photographs of the scene. Of those photographs, several were of the right front fender area of the appellant's car. The photographs revealed blue fiber attached to the damaged area.
Dr. Leroy Riddick, a forensic pathologist, testified to the results of the autopsy performed by him on the victim. He stated the cause of death to be from multiple blunt injuries. The injuries suffered by the victim included a broken spine and right leg, several broken ribs, several deep lacerations, a lacerated liver and dislodged bladder, considerable hemorrhaging, and a severed aorta. After illustrating the requisite knowledge to form such, Dr. Riddick opined that the appellant's vehicle was travelling at the time of impact, at least twenty-five miles per hour.
Dr. Riddick's testimony concluded the presentation of the State's case. The appellant moved to exclude the State's evidence on the ground of failure to prove a prima facie case. The trial court denied the appellant's motion.
The appellant testified on his own behalf and recounted the events leading up to the fatal incident. He stated that in the past he had had "no trouble" with the victim. He stated that after his stepdaughter and he had gotten into his car, he saw the victim coming from his garden toward the driveway. He stated that the victim's route took him behind rather than in front of the small house. He testified that he was rapidly backing down the driveway but did not hit the victim in the driveway as previously testified to by Mrs. Condra and Dean. The appellant testified that the victim was throwing rocks or sticks at him and that he was leaving because he did not want any trouble. The appellant stated that he backed up the road approximately one-half of the distance from the victim's driveway entrance and the nearest intersection. He stated that the victim was within his view during this time but lost sight of him when he changed gears and began to drive forward toward the driveway entrance. The appellant testified that he "showered down on the gas" and before realizing it, the victim had run into the road attempting to throw something at him. The appellant thought the victim had hit his car with the thrown object and did not know that he had hit him until his stepdaughter told him. The appellant confirmed the accuracy of the contents of his statement given on the day in question as testified to by Detective Estes. The appellant testified that the only time he had been arrested was approximately nine years ago in Arkansas for attempted robbery which he characterized as college "hell raising."
On cross-examination, the appellant stated that he was more upset than mad at the incident with his stepdaughter. He *Page 261 
testified that the victim was mad and chasing him down the driveway. The appellant testified that he never lost sight of the victim as he backed down the driveway and into the road and swerved his car to the left to miss hitting him, although he stated that he did not know that he had struck him. The appellant testified that as the victim drew his arm to throw the unidentified object, he threw his arm in front of his face. He stated that he did not know if his car was "fishtailing." The appellant, over objection, admitted being arrested twice for driving without a license, the latter arrest occurring approximately one month prior to the instant incident. He stated that at the time of impact he was traveling approximately thirty-five miles per hour.
The appellant called two character witnesses who testified to his good reputation in the community. On cross-examination, both witnesses, over objection, stated that they had not heard of the appellant being arrested for attempted robbery or driving without a license. One witness stated that before such would affect his opinion of the appellant, he would have to know the entire circumstances, while the other testified that such would not affect her opinion of the appellant or her testimony.
 I
Appellant contends that the trial court erred in allowing the State to elicit testimony from him concerning two prior "arrests" for driving without a license. Appellant brought out on direct examination that he had been arrested for an attempted robbery in Arkansas approximately nine years ago. We now quote the appellant's cross-examination:
 "Q As a matter of fact, Mr. Travis, you testified on direct examination that you only had one arrest in your life; right? Isn't that what you testified; yes or no.
A Major, yes, sir.
 Q Yes, sir. And as a matter of fact, on the month before this happened you were arrested for no driver's license and improper . . .
MR. STEPHENS: Objection . . .
Q . . . lights. Correct?
MR. STEPHENS: . . . irrelevant, immaterial . . .
A No, sir, I was not.
 MR. STEPHENS: Just a second. It's irrelevant and immaterial to this case. THE COURT: I think it was brought out on direct. Overruled.
. . . .
Q And you were not arrested for no driver's license?
 A Not to my knowledge, sir. I was not put behind bars for . . .
 Q I'm not talking about putting behind bars. Were you ticketed for no driver's license, arrested?
A Ticketed, yes, sir. Q And told to come to court?
A No, sir, I never did go to court for no ticket.
Q Never did, did you?
A No, sir.
 MR. STEPHENS: Judge, now again we're going to object. He's asked him the question was he arrested and he stated he was ticketed and did not go to court. That's not an arrest. And we move to exclude.
THE COURT: Denied.
 Q As a matter of fact, you were arrested twice for no driver's license; correct?
A Yes, sir.
 Q And the last time was the month before this accident happened; correct?
A Yes, sir." (R. p. 148-149)
Initially we note that several of the above quoted questions were answered by the appellant in the negative. Furthermore, the only objections made by his counsel during the State's inquiry were general in nature and directed to two questions to which the appellant answered with a negative reply.
A negative response to a question either by a witness or the accused causes the accused no injury. Yates v. State, Ala. Cr.App., 390 So.2d 32 (1980); and cases cited therein; 7 Alabama Digest Criminal Law 1170 1/2 (2). *Page 262 
No objection was made to the questions affirmatively answered by the appellant. Review on appeal is limited to matters on which rulings are invoked in the trial court. Gunn v. State, Ala.Cr.App., 387 So.2d 280, cert. denied, Ala., 387 So.2d 283
(1980); 6B Alabama Digest Criminal Law 1045. Objections to evidence cannot be raised for the first time on appeal. Gunn, supra; Williams v. State, Ala.Cr.App., 377 So.2d 634, cert. denied, Ala., 377 So.2d 639 (1979); 6B Alabama Digest CriminalLaw 1036.1 (1). A timely, specific objection is usually required to preserve an issue on appeal. Starley v. City of Birmingham,377 So.2d 1131, cert. denied, Ala., 377 So.2d 1134 (1979); Gouldv. City of Birmingham, Ala. Cr.App., 375 So.2d 1296 (1979); and cases cited therein; 6B Alabama Digest Criminal Law 1043 (2).
However, by initially injecting the subject of prior arrests into the trial during his direct examination, the appellant opened the subject for further inquiry by the State. Baker v.State, Ala.Cr.App., 344 So.2d 547 (1977); Davis v. State, Ala.Cr. App., 331 So.2d 807 (1976); McClendon v. State, 54 Ala. App. 327,307 So.2d 723 (1975); Vincent v. State, 231 Ala. 657, 165 So. 844
(1936).
In Sly v. State, Ala.Cr.App., 387 So.2d 913, cert. denied, Ala., 387 So.2d 917 (1980), which involved the defendant's willful refusal to comply with a lawful order of a State trooper, we held that the stopping of a motorist by a police officer for a traffic offense did not constitute an arrest. Consequently, the characterization of the appellant's prior traffic violations as "arrests" was improper.
Thus, error would have been shown had the appellant not answered several of the questions in the negative and timely objected to those which he had affirmatively answered. As a result, nothing now is presented for our review.
Furthermore, no application of ARAP 45 can be made as no error was preserved. ARAP 45; Stonoker v. State, Ala.Cr.App.,380 So.2d 342 (1979); Lowery v. State, 33 Ala. App. 446, 35 So.2d 360, cert. denied, 250 Ala. 627, 35 So.2d 362 (1948); Dodd v. State,26 Ala. App. 367, 160 So. 267 (1935).
 II
Appellant asserts that the trial court improperly allowed the State to cross examine his character witnesses concerning his prior arrests. The State's questions were predicated upon whether the witnesses "had heard" of such. The witnesses answered the questions in the negative.
The State may properly test an accused's character witness' knowledge of the good general reputation of the accused by asking whether the witness has heard of reports, rumors, or statements derogatory to the accused. Such is admissible as bearing on the credibility of the character witness and not as substantive evidence of the character of the accused. Baldwin v. State,282 Ala. 653, 213 So.2d 819 (1968); Aaron v. State, 271 Ala. 70,122 So.2d 360 (1960); Crowe v. State, Ala.Cr.App., 333 So.2d 902, cert. denied, Ala., 333 So.2d 906 (1976); Houston v. State,50 Ala. App. 536, 280 So.2d 797, cert. denied, 291 Ala. 784,280 So.2d 801 (1973); and cases cited therein; 19A Alabama DigestWitnesses 274 (2).
In any event, no prejudicial error occurred as the witnesses answered the questions in the negative. Baldwin, supra; Aaron, supra.
 III
Appellant challenges the sufficiency of the State's evidence through his motions to exclude and for a new trial. The evidence, although at times conflicting, fully supports the verdict reached by the jury. Consequently, the trial court properly overruled the appellant's motion to exclude the State's evidence for failure to prove a prima facie case and his motion for new trial on this ground. Briggs v. State, Ala.Cr. App., 375 So.2d 530 (1979); § 13-1-90 Code of Ala. (1975).
 IV
Appellant contends that the trial court erred in failing to expressly instruct the *Page 263 
jury that it was to determine his punishment if they found him guilty. We note that the appellant took no exception to the trial court's oral charge and submitted no written requested charges on the matter, but rather announced that he was satisfied with such.
In order to preserve error on appeal for the trial court's refusal or omission to charge on a particular subject applicable under the evidence, the appellant must submit a written requested charge. To preserve error either in the matter of what the trial court says or does not say, the appellant must make an exception thereto, prior to the time the jury retires to deliberate. Yatesv. State, Ala.Cr.App., 390 So.2d 32 (1980); Burton v. State, Ala.Cr. App., 380 So.2d 361 (1980); and cases cited therein.
Having failed to except to the trial court's oral charge, nothing is presented for our review.
Nevertheless, after a close reading of the trial court's oral charge, we are fully confident that the jury was aware of its function and duty to impose punishment upon the appellant if it found the evidence sufficient under the law to convict him. Furthermore, the jury requested the trial court to repeat its instructions defining the various offenses under which the appellant could be convicted without requesting any explanation as to who was to impose punishment upon him if a guilty verdict was reached. It would appear that had any doubts concerning such arisen, the jury would have voiced such at this time. Having not done so lends credence to the assumption that it fully understood its duty.
 V
Appellant contends that the trial court erred in failing to allow him a reasonable opportunity to request it to poll the jury.
The record reflects that upon returning to the court room with its verdict, the trial court asked the foreman of the jury whether its verdict was unanimous to which he affirmatively replied.
In addition, after the jury's verdict was read, the trial court, during the allocution and prior to pronouncing sentence, inquired if the appellant had anything to say, to which he replied that he was innocent. After pronouncement of the sentence, appellant's attorney gave oral notice of appeal and requested an appeal bond be set.
It is the duty of either party, the appellant or State, to request the trial court to poll the jury prior to their discharge. Otherwise, the right is waived. Brown v. State,63 Ala. 97 (1879); Boyd v. State, Ala.Cr.App., 350 So.2d 757 (1977);Clements v. State, 52 Ala. App. 294, 291 So.2d 748 (1973).
The record indicates that rather than request the jury be polled or object to the denial of an opportunity to do such, appellant's counsel gave oral notice of appeal. Had the appellant's statutory right to request the jury be polled been so flagrantly violated, the record would have reflected an immediate response by his counsel. The record does not support the appellant's contention as argued in his brief. In order to agree with such would require much speculation and conjecture on our part. The record is clear that the appellant did not request the jury be polled and is far too unclear to support appellant's assertions. Consequently, we find no error in the trial court's actions.
 VI
The appellant contends that the trial court erred in not allowing him the opportunity at hearing on his motion for a new trial to question the jurors concerning their understanding and/or misunderstanding as to whose duty it was to sentence him, and cites this court to Hewitt v. State, Ala.Cr.App.,389 So.2d 157 (1980).
The appellant had affidavits from "several jurors" apparently supporting his position, but they were not offered into evidence.
The trial court ruled that while the jurors had been subpoenaed and were present, to *Page 264 
allow them to testify would be tantamount to an impeachment of the jury's verdict. The trial court allowed the appellant to make an "offer of proof" wherein he stated that "the jurors were confused" as to who was to impose punishment upon him and thought their verdict was merely a recommendation to the trial court. Furthermore, he stated that the jurors would have testified that had they known that they were sentencing him, the would not have returned the verdict which included a sentence of ten years, and the trial court's oral charge concerning sentencing and punishment was confusing and misleading.
This important issue is fully discussed, contrary to the appellant's position, in Atwell v. State, Ala.Cr.App.,354 So.2d 30, 37, 38 (1977), cert. denied, Ala., 354 So.2d 39 (1978):
 "After a case has been submitted to the jury, their deliberations in the jury room are not subject to review. Gamble, McElroy's Alabama Evidence, 3rd Ed., § 94.06, p. 207. Public policy forbids that a juror. disclose deliberations in the jury room and demands that they be kept secret. Taylor v. State, 18 Ala. App. 466, 93 So. 78 (1922); Harris v. State, 241 Ala. 240, 2 So.2d 431 (1941). Permitting such impeachment would open the door for tampering with the jury after the return of their verdict. Hawkins v. United States, 244 F.2d 854, 856 (4th Cir. 1957).
 "Consequently a jury's verdict is not subject to impeachment by the testimony of jurors as to matters which transpired during the deliberations. Fox v. State, 49 Ala. App. 204, 269 So.2d 917 (1972). A juror may not, either in impeachment or in support of his verdict, testify as to his mental operation in reaching the verdict.
 "`But in order to sustain a verdict of the jury, for the affidavits of the jurors to be admissible they must be with respect to facts and occurrences open to the observation of other jurors so that they may be subject to contradiction, for the rule does not permit evidence by the jurors' of their own mental operations by disclosing the grounds of, or the reasons for, their verdict, the discussions which took place in the jury room, or the motives or influences which affected their deliberations and decisions, by denying that they were affected by matters which might, if their effect was prejudicial to the moving party, furnish grounds for a new trial, or by asserting that they disregarded improper instructions by the court or incompetent material evidence which was before them and was not seasonably withdrawn or excluded.' Birmingham Electric Co. v. Yoast, 256 Ala. 673, 678, 57 So.2d 103, 107 (1951)."
See also, Weekley v. Horn, 263 Ala. 364, 82 So.2d 341 (1955);Hall v. State, Ala.Cr.App., 348 So.2d 870, cert. denied, Ala.,348 So.2d 875 (1977), cert. denied, 434 U.S. 1021, 98 S.Ct. 745,54 L.Ed.2d 768 (1978); 6B Alabama Digest Criminal Law 957 (1).
The Hewitt case, supra, is not analogous to the instant situation. In Hewitt, the jury during the course of their deliberations asked the trial judge, in open court, who fixed the punishment. After the trial judge had instructed them, the jury, in open court set forth its sentence on a verdict form and handed it to the trial judge. The potential evil addressed by this court in Hewitt did not pertain to the jury's misunderstanding of their duty to sentence the defendant, but rather the irregular procedure in which such was recorded and received.
Appellant's insistence of error concerns the trial court's refusal, on his motion for a new trial, to allow him to examine the jury regarding its understanding as to the proper party who would set his sentence in this case.
Nothing in the record before this court suggests any irregularity in the imposition of the appellant's sentence or the jury's understanding as to its duty to impose it.
Appellant argues that by allowing him to examine the jury, he would have been offering testimony in support of its verdict, while at the same time, insisting that such would have revealed the jury's misunderstanding of its duty to impose the sentence in this cause. *Page 265 
Thus, the appellant, under the guise of offering testimony supportive of the jury's verdict, was in effect attempting to impeach it. This situation is covered by the authorities cited.
 VII
Appellant asserts that the trial court erroneously refused to give twenty three of his thirty nine written requested charges. After a careful review of those charges refused, we find no error of the trial court as the charges were either covered by the trial court's oral charge or appellant's given requested charges, confusing, misleading or erroneous statements of law. Section12-16-13, Code of Alabama, 1975.
We have carefully re-examined the record and find same to be free of error. The judgment of affirmance entered on January 20, 1981 remains in full force and effect.
OPINION CORRECTED: APPLICATION FOR REHEARING OVERRULED.
All the Judges concur.