BOWEN, Presiding Judge.
Mabel Johnson was indicted for the murder of her husband, Paul Edward Johnson. A jury convicted her of manslaughter. Sentence was five years’ imprisonment. Three issues are raised on appeal.
*1335 I
The defendant argues that the State’s own evidence proved that she shot her husband in self-defense. The evidence is un-contradicted that the defendant and her husband had been fighting and that he had “jumped on her” the day of the killing, as he had numerous times before. The real issue is whether the defendant was in imminent danger of death or great bodily harm when she fired.
In her confession, the defendant stated that her husband knocked her down and kicked her: “We tussled and tussled, and then I snatched my pocketbook and ran out the door. He followed me out of the house, chasing me, and then I pulled out my gun [from my purse] and told [him], ‘Paul, I’m tired of you beating on me’, and that is when I shot him.” The defendant stated that she shot because she “was scared he would choke me to death.” At the end of her statement to the police, she volunteered that “all I was trying to do was scare him. I wasn’t trying to hit him. I didn’t mean to kill him.”
The .32 caliber bullet entered Mr. Johnson “on the left side, more toward the back than toward the front” and traveled from left to right. Expert testimony proved that the pistol was over thirty inches away from Mr. Johnson when fired.
In denying the defendant’s motion for a directed verdict, the trial judge issued a handwritten order stating [as best this Court can determine]: “Under the facts of this case considering[?] the distance between the deceased and the defendant when shot fired, the fact that the shot was fired outside the residence, and photos of the defendant do not support her contention of a beating; the fact that the bullet entered the deceased on the left side under his arm toward his back; the fact that there is a clear inference that the defendant shot because the deceased had mistreated her in the past as opposed to immediate self defense. In the Court’s judgment all of the above requires the Court to submit this cause to the jury.”
“On a motion to direct a verdict in favor of an accused, this court is required to consider the evidence in the light most favorable to the prosecution.” Dooley v. State, 437 So.2d 1385, 1386 (Ala.Cr.App.1983).
The record and testimony support the findings of the trial court. King v. State, 355 So.2d 1148, 1150 (Ala.Cr.App.1978).
II
The record does not support the contention that the trial court erred in not allowing defense counsel to impeach the character of the victim by the use of several grand larceny convictions.
The defense offered evidence of the victim’s bad character for violence. In rebuttal, the State called Jonas Williams, who testified that he knew “nothing about no fighting.” On cross examination, defense counsel was permitted to ask Williams, “Do you know that Paul Johnson had served time in prison for assault with intent to murder?”; and “Did you ever hear that he had hit a small child with a baseball bat and severely injured it?” Williams testified that he had not heard these things and that even if he had it would not change his opinion of the deceased.
The alleged error is found in the following portion of the record:
“Q. Did you know that he [victim] had served time in prison, I believe, on three or four occasions for grand larceny?
“A. No, I do not know nothing about that.
“Q. If you had known he had served this time in prison, would that have changed your opinion of him?
“MR. BROWN [Assistant District Attorney]: Objection. No proof of that.
“THE COURT: Wait just a minute. I sustain it, as to grand larceny.
“Q. Did you know that he had been shot by a police officer while committing a crime?
“A. No, I did not know that.
“MR. BROWN: Objection. Totally improper.
*1336 “THE COURT: I sustain that.”
Williams also testified that he did not know that the defendant had had her husband arrested “for threatening and assaulting her.” The issue presented here was first raised in an amendment to a motion for new trial wherein defense counsel asserts that “the victim had been convicted of four cases of grand larceny in Montgomery County. The State Code, 13A-11-70, defines larceny as a crime of violence. Therefore, it was proper to show these convictions to impeach the state witness.”
The general rule is found in C. Gamble, McElroy’s Alabama Evidence § 33.03(4) (3rd ed. 1977):
“When a witness testifies to the victim’s good general reputation for peace and quiet, the defense then has the right to cross-examine the witness by testing his knowledge of the victim’s reputation. This cross-examination is generally accomplished by asking the witness if he has heard rumors imputing acts or qualities to the victim that are inconsistent with his good general reputation for peace and quiet. This questioning is regarded as a means of testing the witness’ true knowledge of the victim’s reputation. It should be remembered, however, that it is not permissible to ask the witness if he has heard rumors imputing to the victim acts or qualities which are not inconsistent with a good general reputation for peace and quiet.”
See also DeArman v. State, 71 Ala. 351, 360-61 (1882).
The crime of larceny is classified as a “crime of violence” for certain purposes (“for purposes of this division”) having to do with the use or possession of a pistol. Alabama Code 1975, § 13A-11-70. See Jackson v. State, 37 Ala.App. 335, 338, 68 So.2d 850, cert. denied, 260 Ala. 698, 68 So.2d 853 (1953), recognizing that “under strict interpretation, the term ‘larceny’ might not be held to be a crime of violence.”
Even if a conviction for grand larceny be considered an act or quality inconsistent with the deceased’s good general reputation for peace and quiet, we find no cause for reversal in this record. The error, if any, was harmless. See Baldwin v. State, 282 Ala. 653, 213 So.2d 819 (1968). Rule 45, A.R.A.P. The only question defense counsel was not allowed to ask witness Williams was whether Williams’ opinion of the deceased would be the same if he had heard that the deceased had served time in prison on three or four occasions for grand larceny. The grand larceny convictions were relatively insignificant considering the other specific acts of violence with which defense counsel had cross examined Williams, especially the conviction for assault with intent to murder, the fighting, the prior assault upon the defendant and the incident when the deceased hit and severely injured a small child. Additionally, we note that the form of defense counsel’s questions was improper for being phrased as “do you know” rather than “have you heard” and as not limiting the rumors to what the witness had heard prior to the charged offense. Veith v. State, 48 Ala.App. 688, 697, 267 So.2d 480 (1972).
Ill
The defendant argues that it was error for the State to call the mother of the deceased to testify that her son had not been convicted of assault with intent to murder when the prosecutor knew that the deceased had such a conviction.
The criminal record of the deceased showed that he was sentenced to two years on November 11, 1974, for assault with intent to murder. In its case on rebuttal, the State called Mrs. Bessie Mae Farrior and specifically elicited her testimony that her son, the deceased, had never served time in the penitentiary for assault to murder. When Mrs. Farrior gave this reply, defense counsel stated, “Just a minute” but made no further comment. On cross examination, Mrs. Farrior testified that “the last time they put him in jail, they put him in there for fighting, something like that.”
*1337 The prosecution put on a second rebuttal witness and rested its case. Only after that time did defense counsel move to strike Mrs. Farrior’s testimony and request a mistrial. After conducting a hearing, which does not appear in the record, the trial judge found that, pursuant to the defendant’s motion for discovery, he had read to defense counsel a “Department of Public Safety document ... which included ... the date of the disposition of assault to murder.” The trial judge noted that the State had informed him that the convictions on the deceased’s record “may or may not be correct.” The judge denied the motion to strike and the motion for mistrial, finding “that the Defendant had more than a week to file whatever was necessary, either with this Court or Superior or a duces tecum to whatever agency would be appropriate.”
The deceased’s arrest record revealed that on November 11, 1974, he received a two-year sentence for assault with intent to murder.
While the prosecutor’s conduct comes dangerously close to being improper, we find that the record does not support the defendant’s allegation that the prosecutor knowingly solicited false testimony. All the questions involving assault with intent to murder involved whether or not the deceased had ever served time in the penitentiary for that offense. Mrs. Farrior was never asked and never specifically indicated that her son had never been convicted of assault with intent to murder.
We resolutely condemn any effort by a prosecutor to knowingly or negligently use false testimony.
“In Napue v. Illinois, 1959, 360 U.S. 264, 79 S.Ct. 1173, 3 L.Ed.2d 1217, the Supreme Court made clear in no uncertain terms that due process is violated when the prosecutor obtains a conviction with the aid of false evidence which it knows to be false and allows to go uncorrected. It is immaterial whether or not the prosecution consciously solicited the false evidence. It is also immaterial whether the false testimony directly concerns an essential element of the Government’s proof or whether it bears only upon the credibility of the witness. As the Court explained in Napue, ‘[t]he jury’s estimate of the truthfulness and reliability of a given witness may well be determinative of guilt or innocence, and it is upon such subtle factors as the possible interest of the witness in testifying falsely that a defendant’s life or liberty may depend,’ 360 U.S. at 269, 79 S.Ct. at 1177.” United States v. Barham, 595 F.2d 231, 241-42 (5th Cir.), appeal from denial of motion to dismiss indictment, 608 F.2d 602 (5th Cir.1979), appeal after remand, 625 F.2d 1221 (5th Cir.1980), cert. denied, 450 U.S. 1002 [101 S.Ct. 1711, 68 L.Ed.2d 205] (1981).
Considering the untimeliness of the objection, the fact that the trial judge conducted a hearing, and the state of the record before this Court, we find no error.
The judgment of the circuit court is affirmed.
AFFIRMED.
All Judges concur.