Robert James Grice was accused and convicted of the capital murder of Louise Grice and of Grover Jarrett. As the jury recommended, the court sentenced Grice to life imprisonment without parole. The state's evidence tended to indicate that Robert James Grice had been married to Louise Grice. While he was in the penitentiary, she divorced him, but after he got out on parole, they remarried. Robert James Grice sometimes stayed with his wife, Louise, and sometimes stayed with his wife's brother, Willie Ellis at Ellis's house in the same general neighborhood. Generally, however, Grover Jarrett stayed with Louise Grice and her children.
On the evening of May 12, 1985, Grice armed himself with a shotgun and went to his wife's residence at 1325 Bellview Street in Montgomery. He went to the back bedroom and shot to death Grover Jarrett, who was lying on a bed with his shoes off. Then he pursued his wife, who was wearing only her panties, into the front yard of her residence. He put the shotgun to her head and killed her near the front of the house. The police, after having been summoned to the scene, proceeded to find and arrest Grice. After his rights were explained to him, he acknowledged that he understood them and told Investigator Davis that he had shot Mrs. Grice and Jarrett. Then he said, "All the lies would come out in court." Two 16-gauge shotgun shells were found near the scene of the killings. Mr. Ellis told investigators that Grice did not live with him but that he sometimes came by. Ellis gave consent to search a room in which defendant was staying. A number of items were seized pursuant to this search. Most of the items were clothing, but one item was a sawed-off barrel to a 16-gauge shotgun. Two of the victim's daughters were in her home at the time of the killing. One of them heard a shot, ran to the bedroom where her mother and Jarrett had gone and observed Grice standing by her mother holding a gun. She saw Jarrett lying on the bed, shot. She told Grice that he was not going to shoot her mother and began to tussle with him. Mrs. Grice ran from the bedroom during the tussle. Grice struck the young woman, Olivia Simmons, across the head with the barrel of his shotgun and, after *Page 786 
she fell, kicked her in the mouth. Then he ran out the back door, chasing Mrs. Grice. A next-door neighbor observed Grice come around from the side of the house, stand by the steps, and then run and catch Mrs. Grice. Then he "put the gun up to her and he shot her and she fell." The neighbor then observed Grice as he ran away.
Appellant was indicted first for first degree assault and then for capital murder.
 I
As his first argument on appeal, appellant contends that the court erred by calling for trial the capital murder case rather than the assault case. Appellant contends that there exists a local rule in the 15th Judicial Circuit of Alabama that cases with the lowest number are tried first when a defendant has two or more indictments. Defense counsel stated that he was prepared on both cases. The high quality of his representation bears out this statement. No evidence of such a local rule has been presented and none is known. There was no abuse of discretion in calling the capital case first. Further, the trial court noted that everyone involved understood that the capital case would be tried first. See Lister v. State,437 So.2d 622 (Ala.Cr.App. 1983), and cases cited therein.
 II
Appellant urges reversible error in that the indictment cited the 1975 capital murder statute rather than the 1981 capital murder statute. The crime in this case occurred on May 12, 1985. It is well settled that the miscitation of a Code section does not void an indictment which otherwise states an offense, unless there is a showing of actual prejudice. Ex parte Bush,431 So.2d 563, 564 (Ala.), cert. denied, 464 U.S. 865,104 S.Ct. 200, 78 L.Ed.2d 175 (1983). The indictment did in fact charge a capital offense. The record contains dialogue between the attorneys and the court that satisfies us that all understood that the 1981 capital murder statute was the one alleged to have been violated.
 III
As his next argument, the appellant contends that the court erred in excluding a juror for cause because of the juror's views on the death penalty. Of course, the appellant was sentenced to life without parole. Excusing the venire members was correct under the doctrine of Wainwright v. Witt,469 U.S. 412, 105 S.Ct. 844, 83 L.Ed.2d 841 (1985). The law is that an appellant cannot complain that prospective jurors were erroneously excluded based on their views of capital punishment, where that jury recommended a sentence of life imprisonment without parole. Neelley v. State, 494 So.2d 669,680 (Ala.Cr.App. 1985), aff'd 494 So.2d 697 (Ala. 1986), cert. denied, ___ U.S. ___, 107 S.Ct. 1389, 94 L.Ed.2d 702 (1987). The appellant in this case further argues that the state cannot ask that people be excused from jury service because of their views on capital punishment because the jury's sentence verdict is only a recommendation. This argument was rejected inCallahan v. State, 471 So.2d 447, 452-53 (Ala.Cr.App. 1983), rev'd on other grounds, 471 So.2d 463 (Ala. 1985). We reaffirm the reasoning of the Neelley and Callahan cases. The appellant also argues that even if the state could excuse prospective jurors from the sentence phase because of their views on capital punishment, the state could not challenge them as to the guilt phase. This argument was rejected by the United States Supreme Court in Lockhart v. McCree, 476 U.S. 162,106 S.Ct. 1758, 90 L.Ed.2d 137 (1986), and we reject it here. In light of these precedents, no error was committed in the jury selection phase of this case.
 IV
Appellant next contends that the court erred in receiving into evidence certain photographs showing the wounds to the victims. We have so many times in the past quoted C. Gamble,McElroy's Alabama Evidence § 207.01(2) (3d ed. 1977):
 "The basic question to be asked in deciding the admissibility of a photograph of a victim, just as with any other demonstrative evidence, is whether it has *Page 787 
a reasonable tendency to prove or disprove some material fact in issue." Citing Ferris v. State, 57 Ala. App. 390, 328 So.2d 640 (1976), and many other cases.
These photographs did have "some tendency to prove or disprove some disputed or material issue" or "to illustrate or elucidate some other relevant fact or evidence, or corroborate or disprove some other evidence offered or to be offered."Baldwin v. State, 282 Ala. 653, 655, 213 So.2d 819, 820 (1968). There is irony in a convicted murderer's contending on appeal that pictures of the corpse of his victim might have inflamed the jury. That risk "comes with the territory."
 V
Appellant contends that the court also erred in receiving into evidence a statement made by the appellant Robert J. Grice in which he said that he shot the victims. The circumstances of taking the statement were examined by the court in considerable detail. The statement appeared to be voluntary, and the trial court so ruled. We find nothing to suggest that the trial court violated its discretion in this respect. The test was correctly applied. Harris v. State, 280 Ala. 468, 195 So.2d 521 (1967). The Miranda warnings were given by Officer Davis, and the accused acknowledged that he understood them. As further evidence that Grice understood his rights, we note that he said, after stating that he had shot the victims, that he did not desire to make any further statement. At that time, Davis stopped questioning him and put him in jail. Both the "Miranda"
prong and the voluntariness prong of theadmissibility test were satisfied. No error was committed in receiving this statement. We note further that Grice testified from the witness stand to essentially the same facts as were in his statement.
 VI
Appellant contends that his Fourth Amendment rights were violated when the authorities searched the room in Willie Ellis's house where he sometimes stayed. Ellis stated to police that Grice neither lived at his apartment nor paid any rent. To be entitled to protection under the Fourth Amendment, a person must establish facts showing that he has a reasonable expectation of privacy in the premises searched. Ex parteCochran, 500 So.2d 1179 (Ala 1985); Rakas v. Illinois,439 U.S. 128, 99 S.Ct. 421, 58 L.Ed.2d 387 (1978). Being a frequent visitor to premises is not sufficient to bring into play the Fourth Amendment rights against unreasonable search and seizure. We have refused to extend Fourth Amendment protection to premises to which an appellant had a stronger claim to expectation of privacy. Hawkins v. State, 333 So.2d 846
(Ala.Cr.App.), cert. denied, 333 So.2d 851 (Ala. 1976). InHawkins, the accused was living with the owner of the searched premises. See also, McLoyd v. State, 390 So.2d 1115
(Ala.Cr.App.), cert. denied, 390 So.2d 1121 (Ala. 1980).
 VII
Appellant Grice contends finally that the court erred in receiving into evidence the barrel of a shotgun which had been sawed off. He argues that there was no evidence that this was a murder weapon. In fact, on the morning of the shooting, Grice was observed by a witness to have a shotgun barrel. The jury could infer that the accused was familiar with 16-gauge shotguns, that he had access to a gun to which that was the barrel, and that he had something to do with a 16-gauge shotgun on the same day that he is accused of murdering two people with a 16-gauge shotgun. In Taylor v. State, 442 So.2d 128, 131
(Ala.Cr.App. 1983), the court stated that "[i]n view of the fact that the witness testified the murder weapon was the same or a similar rifle . . . the gun was properly allowed in evidence." That the accused had a sawed-off 16-gauge shotgun barrel in his possession was highly relevant, and the court did not err in receiving it. Moreover, the gun barrel was admissible because it connected the appellant to the crimes committed. Admission of the barrel was correct because it tended to show appellant's preparation to commit the murders, as well as providing the means by *Page 788 
which the crimes could have been committed. See, Humphrey v.State, 370 So.2d 344 (Ala.Cr.App. 1979); Pope v. State,365 So.2d 369 (Ala.Cr.App. 1978).
This case is due to be affirmed.
AFFIRMED.
All the Judges concur, except BOWEN, P.J., who concurs in result only.